## CONTINUATION OF CRIMINAL COMPLAINT

I, Joshua White, being first duly sworn, hereby depose and state as follows:

### Introduction

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and I have served as such since July 2022. Prior to serving as an ATF Special Agent, I was employed by the United States Secret Service as a Uniformed Division Officer for three and a half years. My daily responsibilities while serving were to screen passholders and appointments who had access to the White House Grounds, assist with protectee movements onto and off of the White House Complex, and enforce D.C. Code as well as Federal Law. I have completed the Federal Law Enforcement Training Center (FLETC) Uniformed Police Training program (UPTP) and the Criminal Investigator Training Program (CITP) with a total combination of over 800 hours of classroom and practical training. I have completed ATF's Special Agent Basic Training (SABT) academy with over 500 hours of classroom and practical training. I am presently assigned to ATF's Lansing Office conducting narcotics/firearms investigations.

2. This Continuation contains only a summary of relevant facts. The facts in this Continuation come from my personal observations, training, experience, and information obtained from other witnesses. I have not included each and every fact known to me concerning the individuals and events described in this Continuation. This Continuation is made for the purpose of establishing probable cause that

MICHAEL ANDREW THOMAS committed the crime of possession of a machinegun in violation Title 18, United States Code, Section 922(o) in Lansing, Michigan.

## Background on Firearm Conversion Devices

3. Firearm conversion devices, often referred to as "switches," are installed on firearms to make them fire in an automatic fashion. When a switch is installed on a pistol and the trigger is pulled, the pistol will fire until the trigger is released, or the magazine is empty. A pistol affixed with a switch can fire over 1,000 rounds per minute.

4. Switches can be made of either metal or a polymer commonly used in 3D-printers. Regardless of its material, a switch typically has three parts, as shown below:



5. A switch can be installed with little technical knowledge in approximately one minute by substituting it for the original slide cover plate, as shown below:


Installed


Conversion device Installed

6. According to 26 U.S.C. § 5845(b), "the term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." The same provision adds that "machinegun" also means "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." Under this definition, a switch itself is a "machinegun," even if it is not attached to a firearm. *See United States v. Dodson*, 519 F. App'x 344, 347–349 (6th Cir. 2013).

7. The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") is not aware of any switches having been produced before May 19, 1986. As a result, switches are governed by the Gun Control Act, 18 U.S.C. § 922(o), which prohibits the transfer or possession of a machinegun manufactured after May 19, 1986. Such machineguns may be lawfully possessed only by appropriately licensed people who have paid a required Special Occupational Tax and are authorized by the United States or a statutorily recognized subpart. Based on information and belief, MICHAEL ANDREW THOMAS is not a licensee with the appropriate authorization.

3

8.  Title 18, United States Code, Section 922(o) states that it is "unlawful for any person to transfer or possess a machinegun." The U.S. Attorney's Office informs me that the government must prove that the defendant possessed the machinegun and "knew of the features of his [firearm] that brought it within the scope of the Act." *Staples v. United States*, 511 U.S. 600, 619 (1994) (discussing the mens rea for illegal possession of a firearm pursuant to the National Firearms Act (26 U.S.C. § § 5801-5872)).

**Probable Cause**

9.  On January 2, 2024, the Lansing Police Department (LPD) Violent Crime Initiative observed THOMAS on his Facebook profile "Soe Two-Three" posting a picture with a firearm. At the time of this post, THOMAS was on conditional bond release in Ingham County and is prohibited from possessing firearms as a condition of his release. See below Facebook post of THOMAS possessing a firearm.

a. 

10.     LPD obtained a search warrant for THOMAS's residence at 1316 Georgetown Blvd, Apt B, Lansing, Michigan 48906. During the search of the residence, THOMAS was located in the southwest bedroom of the apartment. Once THOMAS was located inside the apartment, he was observed wearing the same clothes as was pictured in the Facebook post holding the firearm.

a. 

11.     While LPD VCI was conducting a search of the southwest bedroom, a Glock 10-millimeter pistol with a conversion device attached was located. In addition, the Glock case belonging to the firearm and mail addressed to THOMAS were also located in the southwest bedroom.

a.  

b.  

12. On January 2, 2024, LPD conducted a post *Miranda* interview at the Lansing City Jail, where THOMAS was questioned about the firearm with the conversion device attached. THOMAS stated he had touched the firearm with the attached conversion device earlier that day while taking the pictures he posted on Facebook. THOMAS stated he knew what a conversion device was and that it makes the firearm fire automatically. THOMAS stated that he purchased the conversion device from a Chinese ecommerce marketplace application. THOMAS acknowledged he knew possessing a conversion device was illegal.

## Conclusion

13. Based on the foregoing, there is probable cause to believe that on January 2, 2024, in the Western District of Michigan, MICHAEL ANDREW THOMAS was in possession of a machinegun in violation of 18 U.S.C. § 922(o).

6